*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* YOUNGBLOOD/SLONE, Minors.

UNPUBLISHED
August 13, 2025
1:47 PM

No. 373025
Newaygo Circuit Court
Family Division
LC No. 18-009142-NA

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Respondent appeals by right the trial court order terminating her parental rights to her four minor children pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist with no reasonable likelihood of rectification within a reasonable time). We affirm.

## I. RELEVANT FACTS

These child protective proceedings began in June 2021, when the Michigan Department of Health and Human Services in Newaygo County (Department) filed a petition for the removal of the children because of respondent's long-standing issues with drug abuse, particularly methamphetamine, which affected her mental health, parenting ability, and living conditions. The petition highlighted multiple positive drug tests, neglect of the children's education, and unsafe home conditions, including the presence of unknown men and potential exposure to domestic violence. The trial court authorized the petition, removed the children from respondent's care, and placed them in guardianships, citing the unfit living conditions due to neglect and other factors.

At the adjudication on September 8, 2021, respondent failed to appear, but she was represented by counsel. Testimony indicated that the family had a Children's Protective Services (CPS) history starting in 2009, including an incident in Nebraska in which the children were removed from respondent's care because she was arrested for possession of methamphetamine and drug paraphernalia; and since 2014, there had been 15 CPS investigations with 14 substantiations. Testimony further indicated that respondent had been pulled over at least twice prior to the proceedings and was found with methamphetamine on the first occasion and with prescription medication on the second. A home visit suggested that the house was condemned and in an

-1-

abandoned condition. Follow-up services were provided in or attempted at the home, but when respondent could be contacted and was present, compliance was marginal at best. Testimony also established that several men, who were strangers to the children, were frequenting the home and that inappropriate sexual conduct was taking place in the home, in the presence of the children. Following the hearing, the trial court found by a preponderance of evidence that the court had jurisdiction under MCL 712A.2(b), on the ground that respondent's home was unfit for the children to live because of neglect, cruelty, drunkenness, criminality, or depravity on the part of respondent.

Despite the Department's efforts to provide services, the initial dispositional review hearing on September 29, 2021 showed that respondent did not engage, continued to test positive for methamphetamine and THC, and tested positive for alcohol after it was added to the drug screenings.[1] As a result of these positive screenings she entered rehabilitation on September 23, 2021. She also engaged in verbal abuse with one of the children at a parenting time visit during that time period. As a result, an order was entered discontinuing parenting time on September 29, 2021.

On December 29, 2021, at a dispositional review hearing, the court resumed parenting time for respondent, which would only occur if she tested negatively for illegal substances via a home drug test to be conducted just prior to each parenting time session.

The children were placed under a single guardian in January 2022, but issues persisted, including the respondent's disruptive behavior and failure to take services seriously.

Although there was some improvement in the first half 2023, with respondent repairing the home, unknown men were no longer coming to the home or staying overnight, and her being compliant with the safety plan and regularly engaging in positive parenting time with the children, she continued to test positive for amphetamine and methamphetamine and struggled with employment. By the fall, the prior guardian had been replaced with the children's maternal grandmother and they were living in respondent's home, despite the fact that respondent was still living there. The situation worsened by November 2023, with the children being placed with an aunt due to the respondent's neglect of parenting times and home maintenance.

A final review hearing was held on May 15, 2024. The children's aunt, who was still serving as guardian, testified that respondent was showing up at her home at unscheduled times and acting inappropriately, which was negatively affecting the children. Testimony demonstrated that respondent was not participating in any services recommended by the Department and the substance abuse treatment center where respondent alleged to be receiving treatment indicated that it had no record of respondent. Further, respondent's home was still in disrepair and posed a danger to the children. As a result, the court ordered the Department to file a petition for termination of respondent's parental rights.

The termination hearing was held on July 9, 2024. While respondent appeared with counsel, she left before the hearing began and only her counsel was present for the hearing.

---

[1] Respondent appeared remotely at this proceeding.

Testimony demonstrated that: respondent was not attending drug testing; respondent had not returned to mental health treatment since she met with a worker to create a treatment plan over a year ago; her home remained unfit for the children (e.g., the water had been shut off due to nonpayment); and there was no reasonable likelihood that these conditions would be rectified within a reasonable time due to respondent's lack of engagement with services and the amount of time that had passed. Further testimony suggested that the children faced a substantial risk of harm if returned to respondent's care because her home was in foreclosure and she would be unlikely to be able to provide a safe environment. Additionally, testimony established that respondent continued to associate with unsafe individuals with histories of criminality, drug possession, domestic violence, and gun crimes. Finally, testimony indicated that termination of respondent's parental rights was in the best interests of the children for all of those foregoing reasons, as well as because the children's guardian, their aunt, was willing to adopt them and they were receptive to being adopted. As a result, the trial court entered an order on July 9, 2024 terminating respondent's parental rights. Respondent now appeals that decision as of right.

## II. ANALYSIS

We review for clear error a lower court's finding that statutory grounds for termination have been proven by clear and convincing evidence as well as a lower court's determination that termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A finding is clearly erroneous if, even if some evidence supports the finding, we are nevertheless firmly and definitely convinced that the lower court made a mistake. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). We give deference "to the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016) (quotation marks and citation omitted).

## A. STATUTORY GROUNDS

At a termination hearing, the petitioner bears the burden of establishing by clear and convincing evidence a statutory ground for termination of parental rights under MCL 712A.19b(3). *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). The petitioner need establish only one statutory ground for termination. *In re Olive/Metts*, 297 Mich App at 41.

The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), identifying the conditions that led to the adjudication and that continued to exist as being respondent's mental health, substance abuse, domestic violence, inadequate parenting skills, inadequate housing, and financial issues.

On appeal, respondent does not contest that these conditions continued to exist, nor does she dispute that more than 182 days elapsed between the issuance of an initial dispositional order and termination. See MCL 712A.19b(3)(c). Rather, respondent argues that the trial court erred by finding that there was no reasonable likelihood that she would rectify these conditions within a reasonable time considering the ages of the children. See MCL 712A.19b(3)(c)(*i*). Respondent argues that the trial court improperly focused on her problematic history, and not on the recent positive steps that she had made. We disagree. Respondent has struggled with these issues since at least the time the petition was filed in this case in June 2021.

-3-

The record suggests that the core of respondent's struggles is her continued abuse of illegal drugs. Despite the Department offering respondent services for years, the record shows that respondent only engaged in mental-health and substance-abuse services half-heartedly and never demonstrated meaningful progress on any of these issues, particularly in regard to her drug abuse. Even when respondent was engaging with drug-abuse services, she continued to evade drug screens, and many of the screens that she did complete were positive for methamphetamine. Because of her drug use, respondent never secured stable employment, which in turn prevented her from having her own transportation, led to utilities in her home being shut off, and led to her home being foreclosed upon for unpaid property taxes.

Respondent often displayed inappropriate parenting behavior, such as bringing an unknown boyfriend to parenting time, repeatedly threatening to slap one child, excluding certain children from her attention, and blaming the family's problems on one of the children. It was later discovered that at least two of the men whom respondent allowed in her home had criminal histories and were involved with CPS in other matters.

Respondent's eldest child was not subject to the order terminating respondent's parental rights because she was 17 years of age and did not want respondent's parental rights to her terminated. As of the issuance of this opinion, that child is now over the age of 18. Her first involvement with CPS began when she was less than five years old. The children subject to the termination order range from 5 to 14 years of age. If this case were to continue in the manner that it has before termination, then there is a reasonable probability that one or more of the children, would age out of the child protective process before reunification became appropriate.

Despite respondent's assertion that she has made recent progress toward rectifying the issues that led to the adjudication, she has not demonstrated any kind of meaningful and lasting progress. "[M]ere participation is not the same as overcoming the barriers [to reunification] in place." *In re Sanborn*, 337 Mich App 252, 274; 976 NW2d 44 (2021).

Respondent has never accepted responsibility for her role in causing the troubles that she and her family have endured during the many years that this case lasted. There is no evidence supporting a reasonable probability that she has, despite her largely consistent behavioral history, now committed to rectifying the issues that the trial court identified (with her persistent and unrectified drug abuse being a large contributing factor to the other identified issues). We conclude, therefore, that the record clearly and convincingly proved that there was no reasonable likelihood that respondent would timely rectify her drug abuse and other barriers to reunification, and the trial court did not err by so finding.

## B. BEST INTERESTS

Once the trial court finds that the petitioner established one or more grounds for termination of parental rights by clear and convincing evidence, if it likewise finds that such termination is in the child's best interest, it must order termination of the parent's parental rights. MCL 712A.19b(5); *In re Beck*, 488 Mich 6, 11; 793 NW2d 562 (2010). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. In making a best-interest determination, the focus is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

"The trial court should weigh all the evidence available to determine the children's best interests," and it should consider a variety of factors, including "the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child[]'s well-being while in care, and the possibility of adoption." *Id*. at 714. "The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all." *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020) (quotation marks, citation, and alteration omitted). "[A] child's placement with relatives is a factor that the trial court is required to consider when making its best-interest determination, and a child's placement with relatives weighs against termination." *Id*. (quotation marks and citations omitted). However, that factor is not dispositive. *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022). "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App at 711.

The trial court, in its determination that termination was in the children' best interests, noted that the children needed distance between themselves and the things to which they have been exposed by respondent in order to heal and move on, and that they needed a stable and consistent home without the uncertainty as to whether they could be returned to respondent.

Respondent argues that, because the children were placed with their relative at the time of the termination hearing, the children's best interests could have been better served by preserving the parent-child relationship and considering either reunification or a guardianship. We disagree.

At the time of the termination hearing, the children were placed with their aunt, who intended to adopt them. MCL 712A.13a(1)(j). That fact weighed against termination of respondent's parental rights. See *In re Mota*, 334 Mich App at 321. However, the children's need for stability and consistency strongly weighed in favor of termination of respondent's parental rights, particularly given respondent's "ongoing and unrectified substance abuse issues" and other barriers to reunification. See *In re Atchley*, 341 Mich App at 347. Because respondent failed to participate in, and meaningfully benefit from, her case service plan, the children faced a risk of harm if returned to respondent. See *White*, 303 Mich App at 711. Respondent also did not have a definite home to which the children could be returned because her home was set to be sold at a foreclosure auction. Even if respondent were able to avoid foreclosure, that home was repeatedly found not to be fit for the children, with utilities having been turned off repeatedly due to nonpayment, as well as other issues.[2] Additionally, the record is replete with evidence that the children suffered emotionally and developmentally, and were exposed to illegal drugs and drug paraphernalia, because of respondent's behavior and neglect. The record also evidences that the

---

[2] By way of example, at the termination hearing, the court heard testimony that there was an active wasps' nest in one of the bedrooms in which some of the children previously stayed.

children's mental and emotional well-being tended to improve when separated from respondent, and tended to deteriorate when she was more involved.

Several guardianships were tried throughout this case, but, as the trial court found, respondent's refusal to respect boundaries set by the guardians and her disruptive behavior toward the guardians and children made guardianship unviable as a long-term goal. Although the children do appear to still hold affection for respondent, the record reflects that the children are generally receptive to being adopted by their aunt, and some are excited at the prospect. The record does not suggest that the children will be negatively impacted by the loss of their relationship with respondent.

Under these circumstances, we see no error in the trial court's determination that termination of respondent's parental rights was in the children's best interests.

Lastly, respondent suggests that the factual record was somehow incomplete or inadequate. In support, she cites the Michigan Supreme Court decision in *In re Mason*, wherein the Court said: "[A] court may not terminate parental rights on the basis of circumstances and missing information directly attributable to respondent's lack of meaningful prior participation." 486 Mich at 159-160 (quotation marks and citation omitted). Respondent relies on the fact that her counsel did not offer a closing argument at the termination hearing; counsel only said, "[I]t's unfortunate from my client's circumstances that she is not able to substantially aid me in defending this action."

The circumstances to which respondent's counsel was referring are not clear from the record. However, the Court in *In re Mason* was concerned with the fact that the trial court and Department failed to properly facilitate respondent's right to participate in the proceedings or give the respondent an opportunity to meaningfully participate in the service plan (and then based termination of that respondent's parental rights, in part, on his failure to comply with the service plan). *Id*. at 152-160. In marked contrast, here respondent had extensive contact with the Department and service providers and had meaningful opportunities to participate in her case service plan. She also attended multiple hearings in this case, and she appeared in court on the day of the termination hearing, but then left without explanation before the termination hearing began. Respondent's lack of participation in her service plan or these child protective proceedings was not caused by her being improperly excluded or denied a meaningful opportunity, it was caused by her choice not to participate.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace